**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TERIQUE JONES, | : |
| | : Civil Action No.  06-2461 (DMC) |
| Plaintiff, | : |
| | : |
| v. | : **OPINION** |
| | : |
| MORRIS COUNTY CORRECTIONAL | : |
| FACILITY, et al., | : |
| | : |
| Defendants. | : |

**APPEARANCES:**

   TERIQUE JONES, Plaintiff pro se
   #23923
   Morris County Correctional Facility
   43 John Street
   Morristown, New Jersey 07960

**CAVANAUGH**, District Judge

   Plaintiff Terique Jones ("Jones"), a state pretrial detainee currently confined at the Morris County Correctional Facility in Morristown, New Jersey, seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will (1) grant plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) (1998) and (2) order the Clerk of the Court to file the Complaint.

   At this time, the Court must review the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A to determine whether it

should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Complaint should proceed in part.

## I.  BACKGROUND

Plaintiff alleges that he is a state pretrial detainee currently confined at the Morris County Correctional Facility ("MCCF"), where the alleged civil rights violations occurred.  He brings this civil rights action against the following defendants: the MCCF; Sheriff Edward V. Rochford, Morris County; Chief Ralph McGrane, Under Sheriff at MCCF; MCCF Warden Frank Corrente; and John Doe correctional officers at MCCF. (Complaint, Caption, ¶ 4b-e).  The following factual allegations are taken from the Complaint and are accepted as true for the purposes of this review.

Jones first alleges that he was subjected to daily strip searches while he was confined in pre-hearing detention and disciplinary detention from August 30, 2005 through September 8, 2005, March 14, 2006 through March 17, 2006, and March 20, 2006 through March 25, 2006.  He claims that these strip searches were conducted to humiliate plaintiff.  On several occasions, the strip searches were performed in the presence of female officers.  Further, Jones asserts that there was no reason, justification or

probable cause for the daily strip searches because inmates in pre-hearing detention or disciplinary detention do not leave their cell area.  Plaintiff contends that the searches were intended as punishment in violation of his constitutional rights.[1]

Next, Jones complains that he was denied access to legal telephone calls from May 29, 2006 to June 1, 2006.  The Inmate Manual states that legal telephone calls are made through the Social Services Unit, but when he submitted requests forms they were denied.  He also alleges that inmates' incoming and outgoing mail is delayed for about four to five days.  For instance, Friday mail is held until Monday.  On April 13, 2006, Jones had important legal mail to be sent, but it was not picked up for delivery until April 17, 2006.

Jones further states that inmates' legal is searched without the inmate present.  A new jail policy allows legal mail to be searched for contraband in the same manner as general correspondence.

---

[1]  Jones asserts that the strip searches violated his right against unreasonable search and seizure under the Fourth Amendment, and cruel and unusual punishment under the Eighth Amendment.  As a pretrial detainee, the Eighth Amendment would not apply.  Rather, the right to due process under the Fourteenth Amendment is implicated here.

Finally, Jones complains that detainees are provided with old and dirty footwear at MCCF and that mattresses are not sterilized or cleaned upon reissue.

Jones seeks to recover compensatory and punitive damages totaling $1 million. He also seeks injunctive relief compelling defendants to refrain from continuing the alleged constitutional violations.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA") requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity. Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996). The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them

in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions." Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981). However, where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading requirement that it contain short, plain statement of the claim, but lacked sufficient detail to function as a guide to discovery, was not required to be dismissed for failure to state a claim; district court should permit a curative amendment before

5

dismissing a complaint, unless an amendment would be futile or inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

### III.   SECTION 1983 ACTIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights guaranteed under the United States Constitution.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Here, the claims asserted against MCCF are subject to dismissal because jail facilities are not "persons" for purposes of § 1983 liability.  See Grabow v. Southern State Correctional Facility, 726 F. Supp. 537, 538-39 (D.N.J. 1989); Mitchell v. Chester County Farms Prison, 426 F. Supp. 271, 274 (D.C. Pa. 1976).  Accordingly, the Complaint will be dismissed in its entirety as against MCCF pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

In addition, local government units and supervisors generally are not liable under § 1983 solely on a theory of respondeat superior.  See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n. 8 (1985); Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).  Accord Robinson v. City of

Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

Further, a § 1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." Monell, 436 U.S. at 690 n.55. "[I]n an official-capacity action, . . . a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." Kentucky v. Graham, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).

Here, Jones asserts claims against supervisory officials, namely, Sheriff Rochford, Chief McGrane, and Warden Corrente. He alleges that these defendants operated, facilitated, maintained and/or allowed the MCCF staff to engage in unconstitutional behavior against plaintiff. While these allegations are very general, it does appear that Jones is alleging that these defendants were aware of the unconstitutional conduct and that the offending conduct may have been policy and practice at MCCF. Assuming the allegations are true at this early stage, the Court will allow the Complaint to proceed against these defendants as it is not based solely on a theory of respondeat superior.

IV. ANALYSIS

Construing the Complaint most liberally for the pro se plaintiff, the Court finds that Jones alleges the following claims: (1) unconstitutional strip searches in violation of the Fourth and Fourteenth Amendments; (2) denial of access to legal telephone calls; (3) interference with legal mail; and (4) unconstitutional conditions of confinement.

A. Strip Searches

Jones principally complains that daily strip searches while he was confined in pre-hearing or disciplinary detention were conducted for the sole purpose of humiliating and harassing plaintiff in violation of his constitutional rights. On occasions these searches were performed in front of female officers to plaintiff's embarrassment.

In Bell v. Wolfish, 441 U.S. 520 (1979), the Supreme Court held that invasive body searches of pretrial detainees do not violate the Fourth Amendment as long as the searches are related to a legitimate goal or interest. 441 U.S. at 538. See also Newkirk v. Sheers, 834 F. Supp. 772, 787 (E.D.Pa. 1993). The balancing test requires that courts weigh the need for the particular strip search against the invasion of personal rights that the search entails. Bell, 441 U.S. at 539. Important factors for the court to consider include the level of intrusion, the manner in which the search was conducted, the justification

9

for the search, and the place where the search was performed. Id. Moreover, blanket strip searches, without a reasonable and particularized suspicion, violate a pretrial detainee's due process rights under the Fourteenth Amendment. Id. Searches must be conducted in a professional and reasonable manner. Id. at 560.

In this case, Jones is not complaining about routine shakedowns or cell searches, which are generally permissible given a jail's legitimate interest in maintaining security at its facility. Rather, Jones alleges that he was subjected to daily strip searches of his body, in a humiliating and abusive manner, sometimes in front of female guards to embarrass him, for no legitimate purpose. Plaintiff states that there was no probable cause or justification for the strip searches every day because inmates in pre-hearing or disciplinary detention are not allowed to leave their cells. Thus, he would not have access to obtain and hide contraband to justify a strip search.

Based on these allegations, if true, the Court finds that Jones may be able to prove that the strip searches to which he was subjected were unreasonable. Therefore, this claim will be allowed to proceed past this preliminary screening stage.

B.  Legal Telephone Calls

Inmates must be afforded reasonable access to telephones so as not to infringe the First Amendment or impede meaningful

10

access to the courts in violation of the Fourteenth Amendment. See Inmates of Allegheny County Jail v. Wecht, 565 F. Supp. 1278, 1284 (E.D. Pa. 1983); Owens-El v. Robinson, 442 F. Supp. 1368, 1386 (W.D. Pa. 1978), aff'd in part and vacated in part on other grounds sub nom., Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754 (3d Cir. 1979).  Nonetheless, inmates' rights to communicate, even with legal counsel, are not unlimited.  Aswegan v. Henry, 981 F.2d 313 (8th Cir. 1992).  Prison officials can limit communications, particularly telephone communications, to ensure, safety, security, and the orderly operation of their institution.  Griffin-El v. MCI Telecommunications Corp., 835 F. Supp. 1114, 1122-23 (E.D. Mo. 1993), aff'd, 43 F.3d 1476 (8th Cir. 1994).

Numerous and sometimes stringent restrictions on personal telephone calls by inmates have been upheld as constitutional. Most of these restrictions involve limits on the numbers of calls permitted per week, limits on what persons can be called, and time limits on individual calls. but see Johnson v. Galli, 596 F. Supp. 135 (D. Nev. 1984)(limitation to one call per week, including both personal and legal uses of telephone, unreasonable and in violation of First Amendment).  Detainees may be limited to one monitored personal telephone call every other day.  Martin v. Tyson, 845 F.2d 1451 (7th Cir.), cert. denied, 488 U.S. 863 (1988).

Here, Jones alleges that he has been denied legal telephone calls on several occasions in May 2006. He complains that his submitted requests for legal telephone calls were denied by MCCF Social Services. Jones attaches his request forms and the responses from Social Services to his Complaint. On May 30, 2006, Social Services informed Jones that he has access to telephones on his cell block. On May 31, 2006, Social Services again informed plaintiff that he has access to phones in his housing unit and can place all the legal phone calls he desires. However, Social Services noted that it is up to the individual on the other end of the line to choose to accept the call. If the person on the other end does not accept the call, then it is that person, and not the correctional facility, who is denying access.

Both phone requests were denied on this ground, namely, that the person on the other end of the line was refusing to accept the call. On June 1, 2006, Social Services explained to plaintiff that they would continue to deny the request and that the matter was deemed closed.

Based on these facts, the Court finds that there has been no denial of access to telephone calls for legal purposes. MCCF provides telephone access to inmates in their housing units. In this case, it was the person being contacted by Jones who was refusing the phone call. It was not Social Services who denied plaintiff access. Accordingly, Jones has failed to show any

deprivation of constitutional magnitude under these circumstances, and the claim alleging denial of telephone access for legal calls will be dismissed for failure to state a claim.

C.   Interference with the Mail

The assertion that legal mail is intentionally opened and read, delayed for an inordinate period of time, or stolen states a First Amendment claim.  See, e.g., Antonelli v. Sheahan, 81 F.3d 1422, 1431-32 (7th Cir. 1996); Castillo v. Cook County Mail Room Dep't, 990 F.2d 304 (7th Cir. 1993).  The Court of Appeals for the Third Circuit has held that "a pattern and practice of opening properly marked incoming court mail outside an inmate's presence infringes communication protected by the right to free speech.  Such a practice chills protected expression and may inhibit the inmate's ability to speak, protest, and complain openly, directly, and without reservation with the court." Bieregu v. Reno, 59 F.3d 1445, 1452 (3d Cir. 1995) (applying the Turner analysis), implied overruling on other grounds recognized in Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).

Allegations of inspection or interference with an inmate's legal mail also may implicate the inmate's Sixth Amendment right to communicate freely with his attorney in a criminal case.  See Wolff v. McDonnell, 418 U.S. 539, 575 (1974) (upholding regulation permitting legal mail to be opened and inspected for contraband, but not read, in the presence of the inmate).  Cf.

13

Martin v. Brewer, 830 F.2d 76, 78 (7th Cir. 1987) (prison employees may open official mail sent by a court clerk to an inmate without infringing on inmate's privacy rights).  However, an isolated incident of opening a prisoner's legal mail, without evidence of improper motive or resulting interference with an inmate's right to counsel or access to the courts, does not give rise to a constitutional claim.  See Gardner v. Howard, 109 F.3d 427, 430-31 (8th Cir. 1997) and cases cited therein.

Here, Jones alleges a new policy at MCCF demonstrating a deliberate pattern and practice of opening his legal mail outside of his presence, with the intent to interfere with his pending court matters.  Accepting these allegations as true, at this early stage, the Court is constrained to allow this claim to proceed.

D.   Conditions of Confinement

Finally, Jones alleges that the conditions at MCCF violate his constitutional rights.  Namely, he complains that he was provided with used and dirty footwear and a mattress that was not cleaned or sanitized upon reissue.

A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or State law.  See Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).  Pretrial detainees retain liberty interests firmly grounded in the Due Process Clause of the

Fourteenth Amendment.  See Fuentes v. Wagner, 206 F.3d 335, 341 n.9 (3d Cir.), cert. denied, 531 U.S. 821 (2000).  Analysis of whether such a detainee has been deprived of liberty without due process is governed by the standards set out by the Supreme Court in Bell v. Wolfish, 441 U.S. 520 (1979).  Fuentes, 206 F.3d at 341-42.

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee.  For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. ...
>
> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however.  Once the government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. ...
>
> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.  Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]."  Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment."  Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not

15

>      constitutionally be inflicted upon detainees qua
>      detainees.  ...

441 U.S. at 535-39 (citations omitted).  The Court further explained that the government has legitimate interests that stem from its need to maintain security and order at the detention facility.  "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial."  441 U.S. at 540.  Retribution and deterrence, however, are not legitimate nonpunitive governmental objectives.  441 U.S. at 539 n.20.  Nor are grossly exaggerated responses to genuine security considerations.  Id. at 539 n.20, 561-62.

In Bell, the Supreme Court held that double-bunking under the circumstances presented in that case did not constitute punishment, and therefore, did not violate the pretrial detainees' due process rights.  Id., at 541-43.  The Court further noted that no due process violation occurred where pretrial detainees were detained for generally less than 60 days.  However, the Court cautioned that: "confining a given number of people in a given amount of space in such a manner as to cause them to endure genuine privation and hardship over an extended period of time might raise serious questions under the Due

16

Process Clause as to whether those conditions amounted to punishment." Id. at 542.

Such circumstances of serious overcrowding in a county jail were presented in Union County Jail Inmates v. DiBuono, 713 F.2d 984 (3d Cir. 1983). There, the Third Circuit established a two-part test in line with Bell:

> "we must ask, first, whether any legitimate purposes are served by these conditions, and second, whether these conditions are rationally related to these purposes. In assessing whether the conditions are reasonably related to the assigned purposes, we must further inquire as to whether these conditions "cause [inmates] to endure [such] genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purpose assigned to them."

713 F.2d at 992.

Here, as noted above, Jones alleges simply that he was given used and dirty footwear and a used mattress that was not "sanitized" when he arrived at MCCF. These isolated incidents, without more, do not rise to the level of a constitutional deprivation. There is no suggestion that these two adverse conditions were intended as punishment or are excessively harsh in relation to the general living conditions for incarcerated persons. Therefore, this conditions of confinement claim will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

## V.   CONCLUSION

For the reasons set forth above, the Complaint will be dismissed with prejudice as against defendant MCCF.  As to the remaining defendants, plaintiff's claims alleging denial of telephone access for legal calls and unconstitutional conditions of confinement will be dismissed with prejudice for failure to state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  The claims alleging unconstitutional strip searches and interference with legal mail will be allowed to proceed at this time.  An appropriate order follows.

                                              S/ Dennis M. Cavanaugh  
                                                DENNIS M. CAVANAUGH  
                                            United States District Judge

Dated: 8/28/06